# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

---

14-1446

ROBERT MOSES,

Appellant

v.

KATHY MACFARLAND;
Administrator, New Jersey State Prison;
Attorney General of the State of New Jersey.

---

## MEMORANDUM IN SUPPORT OF THE ISSUANCE
## OF A CERTIFICATE OF APPEALABILITY

---

RUHNKE & BARRETT
47 Park Street
Montclair, New Jersey 07042
(973) 744-1000
(973) 746-1490
jeanbarrett@ruhnkeandbarrett.com
Attorneys for Robert Moses

On the Memorandum:

    Jean D. Barrett

PRELIMINARY STATEMENT

Robert Moses, an inmate in New Jersey State Prison, applies to this Court for a certificate of appealability for his claim that he was deprived of due process of law by the prosecution's failure to disclose evidence within its control which would have been favorable to the defense. The certificate should issue because jurists of reason could disagree with the district court's resolution of this *Brady* claim and because, although the district court concluded that the "last reasoned decision" by the state courts failed to address "the full reach of the constitutional claim," [A 23], it erroneously applied the standard of deference contained in 28 U.S.C. § 2254(d). *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

STATEMENT OF THE CASE

A.   Procedural History

Petitioner was convicted of a 1992 conspiracy to commit murder, murder, second degree aggravated assault, unlawful possession of an assault firearm, unlawful possession of a handgun and possession of a weapon for an unlawful purpose. He was sentenced to life imprisonment with a 30-year period of parole ineligibility for the murder, a consecutive nine-year term for the aggravated assault, along with two concurrent five-year terms for the remaining weapons counts.

Petitioner's convictions were affirmed on direct appeal and his petition for certification to the New Jersey Supreme Court was denied. He filed a timely state post-

conviction relief petition [PCR] alleging that, at the time of trial, the state had withheld significant impeachment evidence about a crucial state's witness who testified under the name Sterling Alexander. More specifically, Petitioner alleged that his conviction was secured in violation of his right to due process of law as guaranteed by both the United States and New Jersey Constitutions because, at the time of trial, the state had failed to disclose that Alexander had used at least one false name in previous court proceedings and had frequent contacts with law enforcement authorities under assumed names.

Because the new one-year statute of limitations for filing a federal writ of habeas corpus took effect while the state PCR was pending, Petitioner opted to file a habeas petition on April 24, 1997 before the expiration of a year since the enactment of the law. As grounds for relief, Petitioner alleged two exhausted claims of prosecutorial misconduct and the failure to charge accomplice liability which had been decided by the state court on direct appeal, and the unexhausted claim pending in state court that due process had been violated because he had not been provided with impeachment material regarding Alexander and was refused a continuance to conduct his own investigation. The habeas petition was stayed pending the outcome of the ongoing PCR. After much delay in the state court[1] the PCR was denied on

---

[1] Briefs were submitted and oral argument was held on July 10, 1997. The state judge entered an order denying the petition without prejudice to reopening with further submissions by Petitioner. Petitioner, then no longer with counsel, filed a *pro se* motion and supplemental brief requesting that the matter be reopened. After an extended period of inactivity, Petitioner retained counsel again and discovered that the court file had been lost. Counsel filed a motion to file the *pro se* motion and brief *nunc pro tunc* to September 1, 1997. The motion was finally assigned to a trial judge in August, 2000 and granted.

November 29, 2001, a denial which was affirmed in a *per curiam* decision by the appellate court relying explicitly on the trial court's reasoning on December 1, 2003. A petition for certification was denied on April 14, 2004.

Petitioner's § 2254 proceeding was reinstated and counsel appointed by the district court. On January 27, 2014, the district court denied the petition and declined to grant a certificate of appealability. [A 30.]

B. Statement of Facts

The essence of the case against Petitioner is that he and his codefendants Marvin Williams and Chancell Youmans participated in a revenge shooting of Corey Stevens over a card-game dispute between Williams and a member of Stevens' group. The state's witnesses to the shooting were three young men who happened to be out on the street in Newark after midnight. Andre Shoulers, a friend of Stevens, testified to the earlier dispute between Williams and another friend of Shoulers', James Hardman. After the dispute, Williams left with co-defendant Youmans in Williams' girlfriend's blue Taurus. Shoulers testified that he and others, including Stevens, later attempted to settle the dispute with Williams, Youmans and Petitioner, but were rebuffed. He testified further that, later that night, he saw Petitioner shoot an unarmed Stevens in a school playground. A second young man said Petitioner shot at him while running from the scene. Finally, a last-minute witness, Sterling Alexander, corroborated the two prior witnesses, placing Petitioner and another man with guns lying in wait near the scene of the eventual killing shortly before it occurred.

None of these three witnesses came forward to identify anyone immediately after the shooting. A defense witness, who *had* given a statement to the police, testified that the victim was shot by man whose description did not resemble Petitioner, who, in the company of two others, shot the decedent from a blue Taurus or Jetta.

LEGAL ARGUMENT

PETITIONER IS INCARCERATED IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT AS A RESULT OF THE PROSECUTOR'S FAILURE TO DISCLOSE IMPEACHMENT EVIDENCE REGARDING A CRITICAL, LAST-MINUTE STATE WITNESS.

Toward the end of its case, the state produced a witness who identified himself as Sterling Alexander. The witness was never questioned by law enforcement in connection with this crime, although his name was mentioned in a statement by another state's witness. When he called the witness, the prosecutor said that his investigator had run a record check and that "nothing came up as a prior felony." After speaking with the witness for a few minutes, defense counsel objected to Alexander's testimony, requesting time to investigate his background and history. The trial court denied the request.

On direct examination, the prosecutor never elicited any identifying information from his witness, such as address, date of birth or employment information. He did, however, ask Alexander if he had pled guilty to a felony handgun charge, to which the witness responded that he had. Having no other information about the witness and having been denied time to conduct his own investigation, defense counsel focused his cross-examination on the details of the story rather than the witness's credibility. In fact, defense counsel had been deprived of significant impeachment information which only came to light during post-conviction proceedings.

The post-conviction evidence revealed that the witness, Sterling Alexander used an

alias, Gary Andrews, to plead guilty to the felony handgun charge about which the prosecutor questioned him. In addition, Alexander had used multiple other aliases, including Cory Alexander, Sterling Andrews, Hassan King and Alexander Sterling. He used the name Hassan King when appearing before a third judge in Essex County and was listed as a fugitive in that case. Furthermore, Alexander and his friend, the *real* Hassan King, cooked up the alias Gary Andrews and used it as well to deceive law enforcement authorities. In conjunction with his felony handgun case, Alexander had supplied a false name and identifying information to the police upon his arrest, to the Public Defender when he applied for representation, to the court at his arraignment, under oath at his guilty plea and to the court at the time of sentence. Because he had used an alias in that case, Alexander remained a fugitive for 18 months between the plea and sentence.[2]

Alexander's mendacity is clearly demonstrated in the guilty plea transcript. When the court inquired as to why he had been a fugitive for such a long time, he allowed his attorney to say, falsely, that he had moved and was "continually checking the old address" for court notices. He said, again falsely, that he had never been in trouble before and allowed his attorney to correct the court and assert that he was Gary Andrews. As a result of these lies, he was released from the county jail the day of the plea.

At sentencing on the handgun charge, nine months before his testimony, not knowing

---

[2]Alexander was murdered on May 20, 1997, slightly a month after the court ordered the prosecutor to release the information which led to this further investigation.

that Alexander was using an alias, the court concluded that he had no prior record as a juvenile or adult and that he was likely to respond to probation. This led the court to impose a probationary sentence – based on a host of big, fat lies. Had the court known the truth, it is inconceivable that it would have imposed a probationary sentence for a crime of the second degree with a sentencing range of five to ten years and a presumption of incarceration.

Obviously, the state would have never offered the testimony had it bothered to check its own file of the guilty plea.[3] This is precisely because, armed with this information, defense counsel would have a field day with this witness. The case would no longer have been about the untimely death of Mr. Stevens, but about the lack of credibility of the state's only involved witness.

The post-conviction court denied a hearing and denied relief. First, the court said that the witness was available to the defense. That conclusion is completely contradicted by the record. The witness's whereabouts were not even available to the state until the eve of his testimony. The only "awareness" on the part of the defense was that the name was mentioned in Shoulers' statement. No one knew he would be a witness and no explanation was given for his miraculous appearance. Furthermore, once the state became aware that the witness had a criminal record, which did not appear on their record check, based on a case in the same courthouse and prosecuted by the same office, it should have informed defense

---

[3]The state had the nature of the offense and the name of the judge before it called the witness. Armed with that information, Petitioner's post-conviction investigator quickly learned that the witness used the name Gary Andrews when he pled and was sentenced.

8

counsel before calling the witness to the stand, which it did not. Had the state checked its own records, it would have easily uncovered the fact that the witness was lying about his identity in some legal proceeding. The state is not only responsible for the knowledge of the individual prosecutor, but the institutional knowledge as well. *Kyles v. Whitley*, 514 U.S. 419, 437 (1995).

*Brady v. Maryland*, 373 U.S. 83, 104 (1963), requires the prosecution to disclose favorable evidence to the defense. To be favorable, evidence need not be determinative of guilt or innocence but must "tend to exculpate" the defendant. *Id*. at 88. *Giglio* material is a subset of *Brady* material, described as "evidence affecting [the] credibility" of a witness whose reliability may be dispositive of guilt or innocence. *Giglio v. United States*, 405 U.S. 150, 154 (1972), *quoting Napue v. Illinois*, 350 U.S. 264, 268 (1959). As stated by the Court in *United States v. Bagley*, 473 U.S. 667 (1985), "[i]mpeachment evidence as well as exculpatory evidence, falls within the *Brady* rule." *Id*. at 674, *citing Giglio*, 405 U.S. at 150. This is self-evident since "'[t]he jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence.'" *United States v. Seijo*, 514 F.2d 1357, 1364 (2d Cir. 1975). *Accord United States v. Pelullo*, 105 F.3d 117, 123 (3d Cir. 1997).

The prosecution's obligation to disclose *Brady/Giglio* material reaches beyond information within the immediate possession or control of the prosecutor. *See Kyles v. Whitley, supra*. Where a prosecutor unintentionally fails to disclose to the defendant

impeachment evidence under its control, the trial prosecutor's lack of personal knowledge is of no consequence. *Kyles* at 437-38. *Accord United States v. Perdomo*, 929 F.2d 967, 970-71 (3d Cir. 1991). A prior conviction of a state's witness is clearly evidence favorable to the defense. *United States v. Perdomo*, 929 F.2d at 971-72.

Here the state failed to disclose the witness's prior conviction and the fact that he had committed perjury during his plea, prior to trial or even prior to his testimony, and, as a result the defense was deprived of crucial impeachment evidence. That failure was compounded by the trial court's refusal to grant defense counsel's request for time to investigate the late-breaking witness. As a result, the jurors never heard about the witness's perjury and repeated lies to law enforcement and the courts about his identity and criminal history. They never learned that he conspired with his friend to invent alternate identities that they could use to avoid accountability for their criminal lifestyles. Clearly, the jury was entitled to know that the witness's prior conduct demonstrated he was not worthy of belief. Indeed, as has already been noted, had a proper investigation into the witness's background been done in the prosecutor's office's own files, he would have never been called.

As the district court correctly noted, [A 23-24], the state trial court wrongly chose to focus solely on the witness's use of an alias. This sleight-of-hand led it to engage in a completely irrelevant side trip into whether an alias could be used to impeach a witness. Never mind that the rule regarding admissibility of the use of an alias was intended to protect a non-testifying defendant from an inference that it meant he or she "belongs to the criminal

class." More to the point, a witness whose credibility is in issue can certainly be impeached with past lies to law enforcement and the court, whether or not it involves an alias. The district court recognized that the trial court's decision had not addressed what is the crux of the *Brady* claim: that the state withheld numerous instances of its witness's lies to law enforcement and to the courts under oath that would have successfully impeached him.

The appellate division issued a brief decision summarily affirming "substantially for the reasons set forth by" the trial court. [A 24.] Based on the failure of the "last reasoned decision" of the state courts to adjudicate his actual claim on the merits, Petitioner argued before the district court that his claim did not fall under § 2254(d)'s standard of review. *See Simmons v. Beard*, 590 F.3d 223, 232 (3d Cir. 2009). Remarkably, the district court rejected this argument by ignoring the plain language of the appellate court decision, misconstruing the inapposite decisions in *Harrington v. Richter*, 131 S.Ct. 770 (2011) and *Cullen v. Pinholster,* 131 S.Ct. 1388 (2011) and casting aside this Court's controlling precedents in a footnote. [A 24-25.]

Although the appellate court had declared that it had affirmed for the same reasons as the trial court, the district court chose to equate this with the summary denials which were before the Supreme Court in *Pinholster* and *Richter* as though the New Jersey appeals court had not meant what it had said. However, the California Supreme Court summary denials before the Supreme Court in those cases bear no resemblance to the appellate decision in Petitioner's case. That difference is, most obviously, that the summary decisions by the

California court contain no reasoning whatsoever. *See, e.g., In re Joshua Richter on Habeas Corpus*, 2001 Cal. LEXIS 1946. Furthermore, there is no lower court decision to look to since state post-conviction review in California begins and ends in the Supreme Court. Thus, *in the absence of information to the contrary*, the Supreme Court has held that California summary opinions, which by their nature, give no reasoning whatsoever for the decision, are presumed to have been decided on the merits of any federal claims raised by California petitioners.

In so doing, however, the Supreme Court made clear that the presumption "may be overcome when there is reason to think some other explanation for the state court's decision is more likely. *See Harrington v. Richter*, 131 S.Ct. at 785, *citing Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). Here, the appellate court said in plain English that it was relying on the trial court's reasoning. To conclude, as the district court did here, that the appeals court ruled on grounds other than that enunciated by the trial court is contrary to the clear language of the state court decision.

Furthermore, unlike in California where the summary denial is the *only* state court decision, here there is a "last reasoned decision" by the state trial court upon which the affirming court explicitly relies. Under the law of this Circuit, which because of the procedural differences in California remains unaffected by *Pinholster* and *Richter*, the district court must look to the "last reasoned decision." As the Supreme Court noted in *Ylst*, "[w]here there has been one reasoned state judgment rejecting a federal claim, later

unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." 501 U.S. at 803. Under these circumstances, the district court erred when it failed to look to the state lower court decision. Had it done so, it is clear that the *Brady* claim was not adjudicated on the merits and no deference should have been given

Finally, the materiality test applied by the post-conviction court was well off the mark. As the Supreme Court pointed out most recently in *Smith v. Cain*, 132 S.Ct. 627 (2012), the test for materiality is not, as the post-conviction court would have it, that the evidence "would have precipitated a different outcome . . . ." Rather,

> [w]e have explained that "evidence is 'material' within the meaning of Brady when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." Cone v. Bell, 556 U. S. 449, 469-470, 129 S. Ct. 1769, 173 L. Ed. 2d 701 (2009). A reasonable probability does not mean that the defendant "would more likely than not have received a different verdict with the evidence," only that the likelihood of a different result is great enough to "undermine[ ] confidence in the outcome of the trial." Kyles v. Whitley, 514 U. S. 419, 434, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995) (internal quotation marks omitted).

*Id*. at 630. Because the post-conviction court applied an erroneous materiality standard, it's decision was contrary to or an unreasonable application of clearly established Supreme Court precedents.

## CONCLUSION

For the reasons expressed above, a certificate of appealability should issue.

                              Respectfully submitted,

                              RUHNKE & BARRETT
                              Attorneys for Petitioner

BY:    */s/ Jean D. Barrett*
          JEAN D. BARRETT

DATED:    Montclair, New Jersey
             March 24, 2014

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this brief was served via ecf on this date upon:

        STEPHEN A. POGANY, ASSISTANT PROSECUTOR
        APPELLATE SECTION
        ESSEX COUNTY PROSECUTOR'S OFFICE
        50 West Market Street
        Newark, NJ 07102

The forgoing statements made by me are true. I am aware that if any of the forgoing is willfully false I am subject to punishment.

                                          */s/ Jean D. Barrett*
                                          JEAN D. BARRETT

DATED:    Montclair, New Jersey
             March 24, 2014